

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00823-CV

Joel M. **HAILEY**,
Appellant

v.

Joseph **PADUH** III, Temporary Administrator of the Estate of Joe Perry Corzine, Deceased, and
Stephen P. Takas Jr., Trustee of the Joe Perry Corzine Trust, and
Successor Independent Executor of the Estate of James L. Corzine, Deceased,
Appellees

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2012-PC-0856A
Honorable Tom Rickhoff, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed: May 7, 2014

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

This is an appeal from a probate court order granting summary judgment in a bill of review action. Appellees Joseph Paduh III, Temporary Administrator of the Estate of Joe Perry Corzine, Deceased, and Stephen P. Takas Jr., Trustee of the Joe Perry Corzine Trust, and Successor Independent Executor of the Estate of James L. Corzine, Deceased (collectively "Paduh") filed a petition for bill of review seeking to set aside two prior probate court orders appointing appellant Joel M. Hailey as guardian of the person and estate of James L. Corzine, and establishing a trust

under Section 1162.001 of the Texas Estates Code, as well as all the orders emanating from these orders.[1] Paduh and Hailey filed competing motions for summary judgment, and the trial court granted Paduh's motion, denied Hailey's motion, and granted a severance, making the matter final for purposes of appeal. On appeal, Hailey contends, for various reasons, the probate court erred in granting summary judgment in favor of Paduh and denying Hailey's motion for summary judgment. We affirm in part, and reverse and render in part.

## BACKGROUND

In 1990, James L. Corzine hired the firm of Hailey & Hailey to prepare a will for James and his wife Dorothy.[2] Pursuant to the will, each spouse bequeathed his or her property to the other in the event one predeceased the other. Upon both of their deaths, all property would pass to their son, Joe Perry Corzine. Dorothy passed away in 2005, and James once again hired the firm, this time to probate Dorothy's will.

In September 2010, Hailey filed an application seeking to be appointed as guardian of the estate and person of James. According to the petition, Adult Protective Services was assigned to investigate James's situation after he fell and was placed in a nursing home. Dr. Edwin O. Whitney filed a certificate in the probate court asserting James suffered from "senile dementia," which the doctor described as "progressive." Dr. Whitney stated James was unable to handle his financial matters or make decisions relating to his health, treatment, or residence. According to the petition, James had but one surviving family member — his son Joe — but Joe had a disability that made him unable to serve as his father's guardian.

---

[1] Effective January 1, 2014, the Texas Probate Code is repealed and recodified in the Texas Estates Code. *See* Acts 2009, 81st Leg., ch. 680, § 1 et seq.; Acts 2011, 82d Leg., ch. 923, § 1 et seq.; Acts 2011, 92 Leg., ch. 1338, § 1 et seq. The new codification is "without substantive change" and its purpose is to make the law "more accessible and understandable." *See* TEX. EST. CODE ANN. § 21.001. Accordingly, in this opinion we shall cite and refer to the Estates Code and its corresponding sections, when possible, where the parties and probate court had originally referred to the Probate Code.

[2] Originally, Hailey's father represented James. It appears Hailey took over the representation in 2005.

On September 28, 2010, Hailey caused a citation to issue, seeking to serve James with a copy of the guardianship application. According to the citation return, the application was personally served upon James, the proposed ward. In addition, Hailey posted a notice that the application had been filed on the door of the Bexar County Courthouse. With regard to Joe, Hailey mailed a copy of the guardianship application and a notice to Joe via certified mail as provided for in section 1051.104(a)(1) of the Texas Estates Code. The mailing address was stated as 301 Weathercock Lane, Windcrest, Texas 78239, an address at which Joe later accepted another certified mailing relating to the trust. The letter, which was directed "to whom it may concern," and the enclosed application, which bore Joe's name and address, were returned "unclaimed" after several attempted deliveries. According to Hailey, however, before the November 19, 2010 hearing on the guardianship application, he personally hand-delivered to Joe a copy of the application and notice, which contained the information required by the Texas Estates Code.

On October 1, 2010, the probate court appointed Hailey as James's temporary guardian. Later, on October 27, 2010, Hailey filed a sworn document entitled "Proof of Notice." In that document, Hailey averred that he sent the application and notice to Joe by certified mail, return receipt requested, as required by section 1051.104(a)(1) — that section requires service of notice of an application for guardianship upon all adult children of the proposed ward. Hailey attached copies of the certified mail documents, but these documents show the application and notice were returned "unclaimed." Hailey contends Joe obviously knew about the guardianship matter because on November 4, 2010, he endorsed a check from the guardianship account, which was established after Hailey was appointed temporary guardian.[3]

---

[3] Joe endorsed another check from the guardianship account on December 3, 2010, and endorsed sixteen other guardianship checks thereafter.

Despite the "unclaimed" stamp on the certified letter, the probate court went forward with the guardianship proceeding, holding a hearing on November 19, 2010. At the conclusion of the hearing, the probate court signed an order appointing Hailey as James's permanent guardian.

That same day, Hailey filed a motion pursuant to section 1162.001 of the Estates Code, asking the court to appoint someone to establish an estate plan to (1) lower the potential tax liability of the $3,000,000.00 estate, and (2) protect Joe from losing government disability payments. The court granted the motion and appointed attorney J. Raymond Karam to "study and advise the Court and Guardian on estate planning pursuant to Section [1162.001], Texas [Estates] Code." Thereafter, Mr. Karam filed an "Application for Section [1162.001] Plan" in which he presented consequences of James's proposed intentions. This document was served on Joe by mail at the Windcrest address, and Joe signed for it.

After a hearing, the probate court signed an order on January 18, 2011, adopting some, but not all, of Mr. Karam's recommendations. In sum, the probate court found a trust "would be the most effective vehicle for the accomplishment of the goals of [the] plan." Accordingly, the probate court created the "James L. Corzine §[1162.001] Trust," and appointed Hailey as trustee.

James died on March 15, 2011, and his will was admitted to probate on September 6, 2011, in Probate Court No. 1 under Cause No. 2011-PC-1899, where it remains pending; the guardianship and trust matters discussed above had been filed and determined in Probate Court No. 2. Joe, as the only surviving adult child, was appointed independent executor of James's estate. On October 14, 2011, Joe filed suit in Probate Court No. 1 against Hailey to recover from him property and money belonging to James's estate. He also sought an accounting and damages based on Hailey's alleged unlawful conduct — breach of fiduciary duty and conversion. Joe specifically sought a declaration that the guardianship established in Probate Court No. 2 was void because the court lacked jurisdiction, and therefore the ensuing trust was likewise void.

Five days after Joe filed suit, Hailey filed the final accounting for the guardianship. From the time the guardianship was established through the filing of the final accounting, the probate court had signed more than sixty orders, including multiple orders authorizing payments to more than forty guardianship creditors, including Hailey for his service in managing the estate. Payments had also been made to numerous trust creditors.

In November 2011, Joe filed a motion for partial summary judgment in Probate Court No. 1 in Cause No. 2011-PC-1899, specifically seeking to have the court declare that certain orders rendered in connection with the guardianship proceeding in Probate Court No. 2 were "null and void by reason of the court's lack of jurisdiction." Joe asserted the probate court lacked jurisdiction in the guardianship matter because he was never served with notice as required by section 1051.104, noting the certified mail envelope in which the application and notice were contained was stamped "Returned Unclaimed." Thus, according to Joe, the record established as a matter of law that the probate court lacked jurisdiction, thereby invalidating the guardianship order, the resulting trust order, and all the orders thereafter.

However, in March 2012, before the judge of Probate Court No. 1 ruled on his motion for partial summary judgment[4], Joe filed a petition and then an amended petition for bill of review in Probate Court No. 2, attacking the order appointing Hailey as guardian of James's estate, as well as all the orders derived therefrom. As he did in his suit in Probate Court No. 1, Joe alleged in his bill of review that the probate court lacked jurisdiction over the guardianship proceeding because Joe was never properly served with the required notice of the application. He also alleged that the section 1162.001 plan approved by the probate court was "jurisdictionally defective" because the

---

[4] The judge of Probate Court No. 1 denied Joe's motion for partial summary judgment in April 2012.

plan approved by the court did more than minimize taxes; rather it allowed Hailey to "dispossess" Joe of his portion of the inheritance that was not subject to tax, i.e., the entire estate.

In June 2012, Joe resigned as independent executor of his father's estate. The court appointed Stephen P. Takas Jr. as successor independent executor. Joe created a trust, transferring his beneficial interest in his father's estate to the trust. Mr. Takas was appointed trustee. He also substituted in as the plaintiff in the bill of review proceeding in Probate Court No. 2. In July, Joe died of cancer. The probate of his estate is pending, and Joseph Paduh III was appointed temporary administrator of Joe's estate.

Paduh moved for partial summary judgment on the pending bill of review, seeking a judgment setting aside the order appointing Hailey as guardian of James's estate and all of the orders derivative thereto, including the order creating the section 1162.001 trust. In response to the bill of review and motion for partial summary judgment, Hailey filed a plea to the jurisdiction, asserting the probate court lacked jurisdiction over anything to do with the guardianship other than approving the accounting and closing it. He also filed a plea in abatement, claiming Probate Court No. 1 had dominant jurisdiction in that Joe essentially filed the same suit seeking the same relief in that court before filing the bill of review in Probate Court No. 2. Alternatively, he asked that the suits be consolidated into a single suit in Probate Court No. 1. Hailey also filed a motion for summary judgment, contending the probate court had jurisdiction because Joe received proper notice, and asserting the defenses of res judicata, collateral estoppel, legal justification, excuse, accepting benefits of judgment, estoppel, and laches.

On November 13, 2012, the probate court — Probate Court No. 2 — granted Paduh's partial motion for summary judgment, declaring void the order appointing Hailey as guardian. The court also declared all the orders resulting from the original guardianship order to be void, including the order approving the section 1162.001 plan. The court also awarded Paduh injunctive

relief and ordered a final accounting. Included in the order was a severance to permit an immediate appeal, which Hailey thereafter perfected.

## ANALYSIS

In this appeal, Hailey contends the probate court erred in granting Paduh's motion for summary judgment regarding the bill of review and denying his. Specifically, Hailey contends the probate court erred because: (1) the probate court lacked jurisdiction to void the guardianship twenty months after the death of the ward; (2) the probate court should have abated the bill of review proceedings in favor of jurisdiction established in Probate Court No. 1 where Joe first filed suit attacking the guardianship; (3) summary judgment in favor of Paduh was improper, and summary judgment in favor of Hailey was proper, because the section 1051.104(a)(1) statutory notice mailed to Joe was sufficient to vest the probate court with jurisdiction over the guardianship application; (4) Paduh is not entitled to relief by bill of review because he failed to exhaust the legal remedies available to him or his predecessor-in-interest, Joe; and (5) Paduh failed to plead or prove the necessary elements to prevail on a bill of review; and (6) Paduh is precluded from challenging the validity of the guardianship or the section 1162.001 trust by quasi-estoppel, res judicata, collateral estoppel, and lack of standing.

### *Jurisdiction After Death of Ward*

First, Hailey contends the probate court erred in granting summary judgment in favor of Paduh, and denying his motion, because the probate court lacked jurisdiction to set aside the order establishing the guardianship and the ensuing, related orders. Specifically, Hailey, relying on section 1204.001(b)(1) of the Estates Code, contends the probate court lacked subject matter jurisdiction because James, the ward, had passed away and therefore the guardianship estate was settled and closed, depriving the court of jurisdiction to take any further action — especially more than twenty months after the ward's death.

Whether the probate court has subject matter jurisdiction over the bill of review filed by Paduh, i.e., to determine whether the guardianship and its attendant orders were void, is a question of law we review de novo. *See In re Estate of Munoz*, No. 04-06-00850-CV, 2007 WL 4547558, at *2 (Tex. App.—San Antonio Dec. 28, 2007, no pet.) (mem. op.); *Herring v. Welborn*, 27 S.W.3d 132, 136 (Tex. App.—San Antonio 2000, pet. denied).

Section 1204.001 of the Estates Code provides that a guardianship is settled when, among other things, the ward dies. TEX. EST. CODE ANN. § 1204.001(b)(1); *see also* TEX. EST. CODE ANN. § 1202.001. However, as this court has recently held, section 1204.001(b)(1) must be read in conjunction with other sections of the Estates Code, and therefore an order *closing* a guardianship estate could be entered by the probate court after a ward died only when:

> (1) the guardian filed a final settlement; (2) citation had been served on all persons interested in the estate; (3) the probate court had examined and approved the final settlement; (4) the probate court had ordered that any part of the estate remaining in the hands of the guardian be delivered to the personal representative of the deceased ward's estate if one has been appointed, or to any other person legally entitled to the estate; and (5) 'the guardian of the estate ha[d] fully administered the estate in accordance with' Chapter XIII of the Texas Probate Code.

*In re Guardianship of Valdez*, No. 04-13-00005-CV, 2014 WL 769444, at *2 (Tex. App.—San Antonio Feb. 26, 2014, no pet. h.) (mem. op.); *see* TEX. EST. CODE ANN. §§ 1204.106, 1204.109, and 1204.152. As we noted in *Valdez*, the Texas Supreme Court recognized the effect of these provisions on section 1204.001 in *Zipp v. Wuemling*, 218 S.W.3d 71, 74 (Tex. 2007), stating, "it is axiomatic that with the death of the ward, the guardianship of the person must end. But the estate must still be settled." *Valdez*, 2014 WL 769444, at *2 (quoting *Zipp*, 218 S.W.3d at 74).

We recognize that in *In re Guardianship of Moon*, 216 S.W.3d 506, 510 (Tex. App.—Texarkana 2007, no pet.), the court of appeals specifically held that "[w]hen a ward dies, the probate court loses jurisdiction of the guardianship matter, except for the filing of the final accounting and closing of the guardianship[.]" However, the court relied upon the language of

section 1204.001 without the benefit of the supreme court's decision in *Zipp*, which specifically noted that other provisions in the Estates Code effected section 1204.001. *Zipp*, 218 S.W.3d at 74. Moreover, the Texarkana court's opinion is at odds with our recent decision in *Valdez*. Accordingly, we do not find *Moon* persuasive.

Here, although the probate court could have entered an order closing the estate, given that the ward had died, *see* TEX. EST. CODE ANN. § 1204.001(b)(1), and Hailey filed a final accounting, *see Valdez*, 2014 WL 769444, at *2, the record does not establish the probate court approved Hailey's final accounting, or rendered an order closing the estate. Accordingly, we hold the guardianship estate was never closed and the trial court retained subject matter jurisdiction over the estate — including jurisdiction to determine whether it had jurisdiction at the outset to establish the guardianship. We therefore overrule this contention.

### Plea in Abatement

Hailey next contends the probate court erred when it refused to abate the bill of review proceeding in favor of the proceeding previously filed in Probate Court No. 1. In both proceedings, Joe attacked the guardianship and resulting orders based on Probate Court No. 2's alleged lack of jurisdiction — based on the "unclaimed" section 1051.104 notice letter. Hailey asserted Probate Court No. 2 should have relinquished jurisdiction in favor of Probate Court No. 1 as it was the court of dominant jurisdiction because Paduh's suit contesting jurisdiction was filed there first.

We review a trial court's ruling on a plea in abatement for an abuse of discretion. *Griffith v. Griffith*, 341 S.W.3d 43, 53 (Tex. App.—San Antonio 2011, no pet.); *F & S Constr., Inc. v. Saidi*, 131 S.W.3d 94, 98 (Tex. App.—San Antonio 2003, pet. denied) (citing *Dolenz v. Cont'l Nat'l Bank of Fort Worth*, 620 S.W.2d 572, 575 (Tex. 1981)). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles of law. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Downer v. Aquamarine*

*Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). The trial court's decision must be "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *BMC Software Belg. N.V. v. Marchand*, 83 S.W.3d 789, 802 (Tex. 2002). Moreover, with regard to an abuse of discretion challenge, the reviewing court may not substitute its judgment for that of the trial court. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

Generally, the court in which a suit is first filed acquires dominant jurisdiction to the exclusion of other courts with concurrent jurisdiction. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010) (citing *Bailey v. Cherokee Cnty. Appraisal Dist.*, 862 S.W.2d 581, 586 (Tex. 1993)); *Schuele v. Schuele*, 119 S.W.3d 822, 824 (Tex. App.—San Antonio 2003, no pet.) (citing *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974)). Abatement of a suit due to the pendency of a previously filed suit is based on the concepts of comity, convenience, and the need for orderly procedure in the trial of contested issues. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988). However, the concept of "dominant jurisdiction" does not apply where one court lacks jurisdiction to hear the matter. *Schuele*, 119 S.W.3d at 824.

Both the suit filed by Joe in both Probate Court No. 1, as part of the matter to resolve his father's estate, and the suit filed in Probate Court No. 2, as a petition for bill of review to set aside the guardianship, sought to void the orders rendered by Probate Court No. 2 with respect to James's guardianship. Despite the identical nature of the issues and that the suit was first-filed in Probate Court No. 1, a court "has *no power to correct* the judgment of another court of co-equal jurisdiction." *Solomon, Lamber, Roth & Assocs., Inc. v. Kidd*, 904 S.W.2d 896, 899 (Tex. App.—Houston [1st Dist.] 1995, no writ) (citing *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973); *Martin v. Stein*, 649 S.W.2d 342, 346 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.)). Rather, a judgment may only be corrected by the court that rendered it, or by a higher court authorized to review the judgment on appeal. *Kidd*, 904 S.W.2d at 900 (citing *Austin Indep.*

*Sch. Dist.*, 495 S.W.2d at 881). Because a bill of review is a direct attack on a judgment, only Probate Court No. 2 had jurisdiction over the bill of review and its contentions.[5] Accordingly, because only Probate Court No. 2 had jurisdiction of the bill of review, the concept of "dominant jurisdiction" as it relates to Hailey's plea in abatement is inapplicable. *See Schuele*, 119 S.W.3d at 824. We therefore hold the trial court did not abuse its discretion in denying the plea in abatement.

Moreover, even if the dominant-servient inquiry were proper, there are exceptions to the rule that the court in which suit is first filed acquires dominant jurisdiction. *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001). For example, the "first filed" rule does not apply if a party's conduct "estops him from asserting dominant jurisdiction." *Id.* If the servient court determines the estoppel exception applies, it may assume dominant jurisdiction and proceed to judgment. *See Howell v. Mauzy*, 899 S.W.2d 690, 698 (Tex. App.—Austin 1994, writ denied).

Here, the record reflects that Hailey argued in his Plea to the Jurisdiction, Special Exceptions, Motion to Dismiss, and Original Answer filed in Probate Court No. 1 that the court had "no jurisdiction over the petition because Probate Court No. 2 already adjudicated the actions and issues alleged in the petition." Accordingly, given Hailey's contention, the probate court could have found he was estopped to assert the dominant jurisdiction of Probate Court No. 1, and we could not say such a finding was an abuse of discretion. *See Howell*, 899 S.W.2d at 698 (holding that in case where same suit was filed in courts of co-equal jurisdiction, party was estopped from

---

[5] We recognize that if the judgment sought to be set aside is void, i.e., one rendered by a court without jurisdiction, the judgment may be collaterally attacked in another court of equal jurisdiction. *In re J.J.*, 394 S.W.3d 76, 81 n.4 (Tex. App.—El Paso 2012, no pet.) (citing *Kidd*, 904 S.W.2d at 900). However, deficiencies that are not jurisdictional render a judgment voidable, not void, and such errors must be corrected by direct, rather than collateral, attack. *Id.* Joe, and now Paduh, assert the probate court lacked jurisdiction because of the allegedly deficient section 1051.104(a)(1) notice, thereby seemingly justifying their collateral attack in Probate Court No. 1. However, as we discuss in the next section of the opinion, the issue relating to notice is not jurisdictional. If we accepted Paduh's assertion on appeal that the issue is one of jurisdiction, then his argument relating to the plea in abatement and co-equal jurisdiction would necessarily fail.

contesting jurisdiction of second court where he sought to compel certain action by that court through mandamus). Thus, we overrule Hailey's contention on the plea in abatement for this reason as well.

### *Summary Judgment — Bill of Review*

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Hausser v. Cuellar*, 345 S.W.3d 462, 466 (Tex. App.—San Antonio 2011, pet. denied). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661. If a movant establishes his or her right to summary judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact to preclude summary judgment. *Cherry v. McCall*, 138 S.W.3d 35, 38 (Tex. App.—San Antonio 2004, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979)). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). When both parties move for partial summary judgment on the same issues and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the trial court should have rendered. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Hausser*, 345 S.W.3d at 466.

### *Jurisdiction and Notice Under Section 1051.104(a)(1)*

Hailey next contends, with regard to the establishment of the guardianship, that it was error to grant summary judgment in favor of Paduh, and deny his motion for summary judgment,

because Joe was given proper notice. Thus, according to Hailey, because proper notice was provided, there was no jurisdictional issue with regard to establishment of the guardianship.

In the motion for partial summary judgment, Paduh asserted Hailey's failure to "serve" Joe with the notice of guardianship proceeding invalidated Hailey's appointment as guardian. Paduh claimed "service" of the section 1051.104(a)(1) notice was necessary for the probate court to acquire subject-matter jurisdiction. In support of his position, Paduh relied upon section 1051.106 of the Estates Code, which provides that the probate court may not act on an application for creation of a guardianship until citation has been made as provided by section 1051.104(a)(1). TEX. EST. CODE ANN. § 1051.106. As noted above, section 1051.104(a)(1) requires the guardianship applicant to mail a copy of the application and a notice by registered or certified mail, return receipt requested, to "each adult child of the proposed ward." *Id.* § 1051.104(a)(1). According to Paduh, there was no "service" as required by the statute because the application and notice sent to Joe by Hailey were returned with the postal notation "unclaimed," thereby establishing a lack of service and violating Joe's due process rights.

In contrast, Hailey claimed in his motion for summary judgment, among other things, that he complied with the requirements of section 1051.104(a)(1) in that he mailed Joe a copy of the application and a proper notice by certified mail, return receipt requested. Hailey provided summary judgment evidence that established — despite the "unclaimed" stamp on the section 1051.104(a)(1) letter — Joe had notice, i.e., actual knowledge of the guardianship proceedings.

In his affidavit, Hailey averred that before he filed the application for guardianship, Joe asked him to serve as his father's guardian. He also swore that before the guardianship order was signed on November 19, 2010, he "told" Joe that he was filing an application for guardianship and "gave Joe a copy of the September 28, 2010 letter" and guardianship application that was in the "unclaimed" mailing. Hailey stated he knew Joe well and had visited his home — where the

section 1051.104(a)(1) notice was sent — many times. Hailey swore he properly stamped, addressed, and mailed the notice to Joe at his last known address, and there was evidence that less than a month after the hearing, Joe signed for a certified piece of mail at the address to which Hailey sent the 1051.104(a)(1) notice. Hailey also provided as summary judgment evidence the court investigator's report in which the investigator stated that Joe asked her on September 29, 2010, "if the guardianship ends when his father dies." Hailey established that Joe endorsed a check from the guardianship account — created under the temporary guardianship — before the November 19, 2010 hearing at which the probate court appointed Hailey permanent guardian of James and his estate. In addition, the probate court's November 19, 2010 guardianship order specifically states, "All other persons entitled to notice of this suit received such notice." Hailey asserted the foregoing evidence established Joe knew about the guardianship, and therefore had "notice," negating a violation of due process.

Thus, it is undisputed, based on the parties' motions — as well as the appellate arguments — that Joe did not receive the application and notice mailed by Hailey pursuant to section 1051.104(a)(1). However, it also appears to be undisputed that by other means, Joe received notice of the proposed guardianship and had actual knowledge of same. Accordingly, the issue before this court is whether the failure of an adult child or a proposed ward to receive the specific section 1051.104(a)(1) notice deprives the probate court of jurisdiction to act on an application for guardianship. We hold that it does not.

Although the Estates Code requires that the sheriff or other officer personally serve citation to appear and answer a guardianship application on a proposed ward who is twelve years old or older, an adult child is not entitled to service of citation, but rather a certified letter with a copy of the application and the proper notice. *Compare* TEX. EST. CODE ANN. § 1051.103(a)(1) *with* TEX. EST. CODE ANN. § 1051.104(a)(1). Section 1051.101(a)(1) merely requires that a copy of the

application, along with a notice containing certain information, be mailed to an adult child of the proposed ward.

Courts in this state, including the supreme court, have held that where a statute authorizes service by mail, notice is effective when the notice is provided in accordance with the statute — even if unclaimed or undelivered. *See Campus Investments, Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004) (holding in bill of review proceeding that Secretary of State certificate that process was forwarded per statute is sufficient proof of service even if defendant never received it); *Tex. Real Estate Comm'n v. Howard*, 538 S.W.2d 429, 430, 433 (Tex. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.) (holding that where statute provided for notice of revocation of broker's license by registered mail, notice was effective when properly stamped, addressed, and mailed — even though returned "unclaimed"); *cf. McClung v. Komorn*, 629 S.W.2d 813, 815 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) (holding that notice required by Medical Liability and Insurance Improvement Act, so as to toll statute of limitations, was effective upon deposit of certified mail, return receipt requested, with USPS as provided by statute — receipt four days after limitations expired was of no moment).  As the Austin Court of Appeals recognized in *Wesco Distrib., Inc. v. Westport Group, Inc.*, Texas has a longstanding rule that a mailed notice is "effective if it has been properly mailed, meaning properly addressed and bearing the correct amount of postage."  150 S.W.3d 553, 561 (Tex. App.—Austin 2004, no pet.).  In other words, "[w]hen a sender has done everything necessary for notice to arrive, notice is considered effective as to the intended recipient." *Id.*

Here, the uncontested summary judgment establishes Hailey mailed the application and required notice to Joe by certified mail, return receipt requested — stamped and properly addressed.  The attempted delivery by the USPS establishes proper postage, and the propriety of the address is established by the fact that not long after the guardianship proceeding, Joe accepted

and signed for a certified letter at the address used by Hailey to send the 1051.104(a)(1) notice. Accordingly, the summary judgment establishes the statutory notice was effective — as noted by the probate court in its order — thereby vesting the probate court with subject-matter jurisdiction over the guardianship and personal jurisdiction over Joe.

Moreover, this court addressed the jurisdictional impact, or lack thereof, when a guardianship applicant fails to strictly comply with the mandates set forth in section 1051.106 — the provision relied upon by Paduh to support his contention that the probate court lacked jurisdiction. *See In re Guardianship of V.A.*, 390 S.W.3d 414 (Tex. App.—San Antonio 2012, pet. denied). In *Guardianship of V.A.*, the court failed to comply with the ten-day waiting period in section 1051.106 and the applicant did not file the affidavit mandated by section 1051.104(b)(2). Section 1051.106 provides that a court may not act on a guardianship application until: (1) the guardianship applicant has filed the affidavit required by section 1051.104(b); (2) at least the Monday following the expiration of ten days after service of notice; (3) and citation has been made under sections 1051.102, 1051.103, and 1051.014(a)(1). TEX. EST. CODE ANN. § 1051.106. In *Guardianship of V.A.*, it was undisputed that neither the first nor second provisions in section 1051.106 was strictly complied with. 390 S.W.3d at 419. Based on this lack of compliance, the appellants claimed the probate court lacked jurisdiction over the guardianship matter — generally the same argument made by Paduh in this case.

We analyzed the statute to determine whether it was jurisdictional based on the analysis in *City of DeSoto v. White*, 288 S.W.3d 389 (Tex. 2009). In that case, the supreme court set forth a framework for determining whether the legislature intended a statutory provision to be jurisdictional. *Id.* at 394–97. As did the supreme court in *City of DeSoto*, we began our analysis by looking at the plain language of the statute, noting that the "may not" language in section 1051.106 indicates the waiting period is mandatory, as is the filing of the affidavit. *Guardianship*

*of V.A.*, 390 S.W.3d at 420. However, we held the statute did not contain express language evincing a legislative intent to make the requirements jurisdictional. *Id.*

Then, as did the supreme court, we looked at "the presence of absence of specific consequences for noncompliance." *Id.* at 418 (quoting *City of DeSoto*, 288 S.W.3d at 396). We observed that although the legislature specifically provided there would be no consequences for failure to give notice to certain persons — siblings, nursing home administrators, operators of residential facilities, persons holding a power of attorney, certain guardians, relatives within the third degree of consanguinity in certain instances — this did not indicate an intent to allow a party to contest a failure to comply with other provisions "under a jurisdictional-defect theory." *Id.* at 420. And, in fact, the legislature did not include any consequence language with regard to a failure to comply with section 1051.106. Finally, we looked at the consequences that would result from a jurisdictional versus a non-jurisdictional interpretation. *See id.* (citing *City of DeSoto*, 288 S.W.3d at 396). Noting that under section 1055.001, any person who is not adverse to the ward is entitled to bring a guardianship proceeding, we held the consequences of finding the statute jurisdictional were *de minimis*. *Id.* at 421. Thus, we held that a failure to file the mandated affidavit or wait for the expiration of the ten-day period did not deprive the probate court of jurisdiction to establish a guardianship. *Id.* We hold that the analysis in *Guardianship of V.A.* — based on the supreme court's framework in *City of DeSoto* — mandates a similar holding in this case.

In this case, looking at the plain language of the pertinent statutes, sections 1051.104(a)(1) and 1051.106, it is clear that the guardianship applicant must mail a copy of the application and notice by certified mail to an adult child of the proposed ward and the court "may not" act on the application until this is done. However, as noted in our previous opinion, section 1051.106 does not contain express language evincing a legislative intent to make the requirements jurisdictional. *Id.* at 420. Similarly, there is nothing in section 1051.104(a)(1) to suggest the legislature intended

this to be a jurisdictional requirement. As for consequences for noncompliance, we hold that statutory language stating that notice to some is of no consequence, *see* TEX. EST. CODE ANN. § 1051.104(c), does not establish that notice to others is a jurisdictional requirement. Finally, the consequence of holding the notice requirement of section 1051.104 to be nonjurisdictional is *de minimis* — pursuant to section 1055.001 of the Estates Code, Joe could have contested the guardianship proceedings based on the alleged absence of notice. The consequence of holding the notice requirement to be jurisdictional is far-reaching, possibly resulting, as it would in this case, in the invalidation of numerous payments to creditors and others for management of the estate. Thus, we hold, under the facts of this case, the mandate of section 1051.104(a)(1), requiring notice to a ward's adult children, and the provisions of section 1051.106, stating when the court may act on a guardianship application, are not jurisdictional.[6]

We hold the trial court erred in granting summary judgment in favor of Paduh, and denying summary judgment in favor of Hailey, with regard to the portion of the summary judgment related to the creation of the guardianship. We hold the trial court erred in rendering summary judgment that the order appointing Hailey as guardian of the person and estate of James L. Corzine is null and void and that the orders derivative of that order are null and void, except for the order relating to the creation of the section 1162.001 trust. The order establishing the section 1162.001 trust was challenged by Paduh on additional jurisdictional grounds — other than a lack of notice to Joe — and we will discuss the validity of that order below.

---

[6] As a corollary to our analysis and conclusion, we note that the probate court's order appointing Hailey as guardian was not void, as Paduh asserted and the probate court found, but voidable. Voidable judgments may only be attacked directly. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). Accordingly, it is now clear that any attack on the probate court's order appointing Hailey as guardian of the person and estate of James, and those orders emanating therefrom, is, *per force*, a direct attack.

*Jurisdiction and Exceeding the Scope of Section 1162.001*

In the motion for summary judgment, in addition to claiming that a lack of proper notice under section 1051.104(a)(1) rendered the probate court's orders void for lack of jurisdiction, Paduh asserted a second ground with regard to the probate court's order approving the section 1162.001 trust. Specifically, Paduh claimed the probate court's order approving the section 1162.001 trust plan was void because it exceeded the scope of section 1162.001, i.e., it approved a plan that did more than minimize taxes.[7] Paduh asserted section 1162.001 permits a court to amend a ward's estate plan, but it does not allow the court to make such changes other than to minimize taxes. Paduh claimed the plan approved by the probate court exceeded the scope of the statute by transferring all of the wards property to a trust that allowed Hailey to dispose of it in his sole discretion, depriving Joe of his ultimate inheritance. Paduh asserted the probate court lacked subject-matter jurisdiction to approve such a broad order.

In his opening and reply briefs, Hailey contends the only basis upon which Paduh asked for summary judgment in the probate court was a lack of jurisdiction based on defective notice. We disagree. As noted above, in his motion for summary judgment, Paduh specifically asserted that the probate court's order approving the section 1162.001 trust was void for lack of subject-matter jurisdiction because it did more than minimize taxes, thereby exceeding the scope of the statute and the court's jurisdiction. Thus, Hailey's contention is without merit, and the ground asserted by Paduh was an independent ground for summary judgment.

When a party moves for summary judgment on multiple grounds and the trial court's summary judgment order does not specify the ground or grounds upon which it was based, the appealing party must negate all possible grounds upon which the order could have been based by

---

[7] Section 1162.001 provides that a guardian may apply for an estate plan "for the purpose of minimizing income, estate, inheritance, or other taxes payable out of the ward's estate." TEX. EST. CODE ANN. § 1162.001.

either (1) asserting a separate issue challenging each possible ground, or (2) asserting a *Malooly* issue and within that issue providing argument negating all possible grounds upon which summary judgment could have been granted. *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.— Dallas 2009, pet. denied); *see Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *see also Malooly Bros, Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970). Thus, Hailey was required to challenge on appeal — to obtain a reversal with regard to the order approving the 1162.001 trust — the ground that the trial court lacked subject-matter jurisdiction because its order exceeded the scope of section 1162.001. *See Jarvis*, 298 S.W.3d at 313; *Star-Telegram, Inc.*, 915 S.W.2d at 473.

If an appellant does not challenge each possible ground on which summary judgment could have been granted, we must uphold the summary judgment on the unchallenged ground. *Jarvis*, 298 S.W.3d at 313; *Star-Telegram, Inc.*, 915 S.W.2d at 473. We have reviewed Hailey's opening brief and agree with Paduh that although Hailey presented a *Malooly* issue, he did not provide argument negating the "exceeded scope of statute-jurisdiction" ground for summary judgment asserted by Paduh in his motion. Accordingly, we must uphold the portion of the probate court's summary judgment order finding the order approve the estate plan under section 1162.001 "null and void." *See id.*

We recognize that in his reply brief, Hailey argued the scope of the probate court's order did not in fact exceed the scope of the statute, and therefore summary judgment on this basis was improper. However, as this court has held, a reply brief is not intended to allow an appellant to raise new issues and issues raised for the first time in a reply brief are waived. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 72 (Tex. App.—San Antonio 2011, no pet.); *Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex. App.—San Antonio 2003, pet. denied); *JHC Ventures, L.P. v. Fast Trucking, Inc.*, 94 S.W.3d 762, 773 n.9 (Tex. App.—San Antonio 2002 no pet.); *see*

*Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996) (declining to consider issue first raised in reply brief); *Quick v. Plastic Solutions of Tex., Inc.*, 270 S.W.3d 173, 186 (Tex. App.—El Paso 2008, no pet.); *Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pets. denied) (same). Accordingly, we hold Hailey waived any challenge to the probate court's summary judgment with regard to the order approving the section 1162.001 trust based on lack of jurisdiction.

<u>Additional Challenges to Summary Judgment Order</u>

We recognize that Hailey raises additional issues challenging the probate court's summary judgment order. However, given our disposition of the other issues, and Hailey's waiver with regard to the ground challenging the section 1162.001 trust order, we need not address these remaining issues.

CONCLUSION

Based on our review and analysis of the record, the briefs, and the applicable law, we hold: (1) Hailey waived any challenge to the portion of the probate court's order granting summary judgment in favor of Paduh with regard to the order approving the section 1162.001 trust because he did not challenge in his opening brief one of the grounds upon which Paduh sought summary judgment; and (2) the probate court erred in granting Paduh's summary judgment motion, and denying Hailey's summary judgment motion with regard to the order appointing Hailey guardian or the person and estate of James L. Corzine. Accordingly, we affirm the portion of the summary judgment in favor of Paduh that declares the order approving the 1162.001 trust, and the orders emanating directly from that order, null and void. However, we reverse the portion of the summary judgment in favor of Paduh that declares the order appointing Hailey as guardian, and the orders

emanating directly therefrom, null and void, and we render judgment in favor of Hailey, holding those orders are not void for lack of jurisdiction.

Marialyn Barnard, Justice